**Affirmed and Majority and Dissenting Opinions filed April 24, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-01058-CR

---

## WILLIAM DAVID KELLEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1333908**

---

## DISSENTING OPINION

I agree with the majority that the jury charge contained an error. I respectfully dissent from the majority opinion because that error was significant and caused some actual harm to appellant. The case should be reversed for a new trial.

The majority concludes in Section E that the inclusion of the "on or about" instruction in the jury charge was error. The charge was erroneous because it includes a much broader "chronological perimeter" than was permitted under the

indictment. The charge allowed the jury to convict appellant for two later 90-day periods[1] rather than for the period ending September 1, 2011. However, the majority concluded that this did not cause appellant harm. I disagree. In evaluating whether or not appellant was harmed we consider the entire trial including the argument of counsel, the evidence, and the entire charge. *See Vasquez v. State*, 389 S.W.3d 361, 368–69 (Tex. Crim. App. 2012) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)).

Almost half of the evidence[2] in the trial concerned events that occurred after September 1, 2011. While the first part of the evidence (witnesses 1 through 4) concerned the events leading up to September 1, the second half of the evidence (witnesses 5 through 9) concerned primarily events after September 1.

The post-September 1 evidence was emphasized by the State in its opening. More than one half of the opening was spent on facts that occurred after September 1. The State accused appellant of playing games, claiming to be homeless when he was not on September 22, and signing a sheet on September 29 but then leaving. The State concluded: "And the evidence that you're going to hear is from September 22nd, all the way to January 12th, nobody in law enforcement knew where this man was, didn't have an address for him so that if you were to run him on the DPS website, you wouldn't find him in an accurate address."

---

[1] The two other 90-day periods are roughly September 1, 2011 through January 1, 2012 and January 1, 2012 through April 1, 2012.

[2] The record indicates that the State presented 118 pages of testimony on events leading up to September 1, and presented 87 pages of testimony on events after September—a total of 43% of the testimony was spent on events after September 1.

The State's first witness, Tammy Sonsel, testified that as appellant was being released from prison, she told him about his duty to register.[3] She was the only witness presented on the first day of testimony.

On the second day of testimony, the State's second witness, James Dalrymple, established that appellant was a sex offender.[4]

The State's third witness was Houston Police Officer Jerry McCollum. He established that appellant registered with him in September of 2010 and verified his registration in December of 2010. Officer McCollum also testified that he will not have someone arrested for failing to register timely if the person makes a late appointment or if he shows up late and registers. He did not testify as to how late an offender could be.[5]

The State's fourth witness was Deputy Santos Lopez from the Harris County Sheriff's Office. He established that appellant changed his registration to Harris County on February 21, 2011, due to an address change that put him outside the city limits. Appellant verified this registration May 26, 2011 as required. Deputy Lopez also established that appellant had an appointment for September 1, 2011, which was technically one day late under the statute. Deputy Lopez indicated that he would not file charges against appellant for being one day late and that he will work with sex offenders if they are working with him. He denied any record of appellant trying to call and reschedule. But he testified that if appellant had missed the appointment and called and tried to register, he would have worked with him.[6]

---

[3] The State's direct and redirect examination of Sonsel consists of 21 pages in the record.

[4] The State's examination of Dalrymple consists of 10 pages in the record.

[5] Officer McCollum's direct and redirect examination consists of 34 pages in the record.

[6] Deputy Lopez's direct and redirect examination consists of 53 pages in the record.

The State's fifth witness was Officer Michelle Burroughs of the Houston Police Department. Appellant objected to her testimony because it was going to concern events that occurred after September 1. The court overruled the objection and allowed a running objection to the testimony. Officer Burroughs testified that appellant showed up on September 22, without an appointment and claimed he was homeless. She did not register him because he was homeless and could not give her a physical location for where he might be found, but she told him to return in 7 days. She also testified that appellant signed a sign-in sheet on September 29 but that there are no records that he talked to anyone.[7]

After a three day break due to an ill juror and the weekend, trial resumed. On the third day of testimony, the judge continued to grant a running objection to evidence as to what occurred after September 1, 2011. The State presented its evidence in the morning and rested by lunch. The State's sixth witness was Margarette Dempsey, who established that appellant applied for food stamps on September 30, 2011 using an address of 5002 North Shepherd Dr. and that he filed a change of address on October 25, 2011, indicating that he had moved to 5329 Lanibeth. On both forms he indicated that he paid rent for those locations.[8]

The State's seventh witness was Terry Smith who worked at a drug and alcohol treatment facility located at 5002 North Shepherd. He testified that appellant checked into the facility on August 30, 2011 and left the program on September 16, 2011.[9]

---

[7] Officer Burroughs's direct examination consists of 24 pages in the record.

[8] Dempsey's direct examination consisted on 8 pages in the record.

[9] Smith's direct and redirect examination consists of 6 pages in the record.

The State's eighth witness was Matthew Parker with the District Attorney's Office who prepared a summary of appellant's telephone records up until late October.[10]

The State's ninth and final witness was Deputy Edward Barnot with the Harris County Sheriff's Office who arrested appellant. He first started looking for appellant around January 13, 2012 and went to his last known address and learned that he had checked out of that hotel on August 7, 2011. He checked the driver's license records and found that appellant had a new driver's license (updated September 29, 2011) with an address of 5329 Lambeth—a street that did not exist. He used a key map to find 5329 Lanibeth, an address with the same zip code, and arrested appellant at that location on January 26. Deputy Barnot also testified to the fact that appellant's employment records indicated that he changed his address September 15, 2011 to the 5002 North Shepherd location (the rehabilitation facility) and on November 1 appellant changed his address to 5329 Lanibeth.[11]

The defense presented two witnesses in the afternoon and closing argument took place the next day. In its closing argument the State emphasized on numerous occasions that the jury could consider appellant's continuing failure to comply. They pointed out his registration for food stamps and for a driver's license in September. The State continually argued that appellant violated the law after September 1, 2011:

> STATE: Frankly, we're not saying that he didn't violate the law September the 1st when he failed to show up for his appointment that day, but what it also tells you is that you can consider every day after September the 1st when he's not in compliance.

---

[10] Parker's direct and redirect examination consists of 7 pages in the record.

[11] Deputy Barnot's direct and redirect examination consists of 49 pages in the record.

DEFENSE: I'm sorry, Judge. I'm going to object. I think there are constitutional implications to that argument that I've already made in regards to the Charge. I'd like to renew those at this time.

COURT: Your objection is overruled.

STATE: Every single day he wasn't in compliance on September 2nd —

DEFENSE: Judge, I'm sorry. That is —

STATE: He wasn't in compliance on September the —

DEFENSE: I'm sorry. May I make my objection?

COURT: You may have a running objection, Mr. Lafon.

STATE: He wasn't in compliance on September 4th or 5th or 6th. . . .

Nobody knew where he was November, December, January, October, since September the 1st. . . .

The phone calls end in October. Where is he in November? Where is December? Where is he in January?

The court's charge also included the law that a person is required to register not less than once in each 90-day period following the date the person first registered under this chapter. And on a totally separate page—emphasizing the instruction—the jury was given the incorrect instruction:

You are further instructed that the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed, but that a conviction may be had upon proof beyond a reasonable doubt that the offense, if any, was committed at any time prior to the filing of the indictment which is within the period of limitations. The limitation period applicable to the offense of failure to comply with sexual registration requirements is three years prior to April 17, 2012, the date of the filing of the indictment.

6

Finally at least one question from the jury indicated that they were considering the later violations as they asked if the defendant has been incarcerated the entire time since his arrest in January 2012.

On this record I believe that there was some harm to appellant and in fact a high likelihood that he was convicted for not registering for the next 90-day period after September 1 (the September 1 through January 1 period of time), rather than for not registering on September 1. The jury could have concluded that the efforts that appellant made to register in September negated any intent by appellant to not comply with the statute for that 90-day period. However, appellant did not present any excuse for not registering in the 90-day period from September 1 through January 1, 2012. He was not indicted for that crime and he did not present a defense to that crime but the jury charge allowed him to be convicted for that crime. Appellant suffered harm from the erroneous jury charge. I would remand for a new trial.

/s/    Tracy Christopher
Justice

Panel consists of Justices Boyce, Christopher, and Brown. (Brown, J., majority). Publish — Tex. R. App. P. 47.2(b).

7